905 So.2d 1139 (2005)
Albert F. MORRIS, Jr.
v.
ZURICH AMERICAN INSURANCE COMPANY, Carquest Auto Parts of Metairie, Louisiana, Inc. and Stephanie Andrew.
No. 05-CA-109.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 2005.
*1140 Albert F. Morris, Jr., Metairie, LA, in Proper Person.
David K. Persons, Alayne R. Corcoran, Hailey, McNamara, Hall, Larmann & Papale, Metairie, LA, for Defendants/Appellees.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
On March 13, 2001, Albert J. Morris ("Morris") and Stephanie Andrew ("Andrew") were involved in an automobile accident. Andrew was in the course and scope of her employment with Carquest Auto Parts ("Carquest") at the time of the accident and was driving a pick-up truck belonging to her employer. Morris was traveling on 17th Street in Metairie. Andrew was sitting in the pick-up truck in the driveway of a customer, to whom she had made a delivery. Andrew stated the pick-up truck was in neutral and she had her foot on the brake. Andrew's truck allegedly rolled down the driveway and into the street, where it hit Morris' vehicle on the passenger side.
As a result of this accident, Morris alleges he sustained injuries to his back and neck. He sought treatment with Dr. Donald S. Gervais, a neurologist, on July 20, 2001. An MRI was taken in September 2001, and the radiologist's report indicated no disc herniation. However, Dr. Gervais opined that there was a bulge at L5-S1. Based on Morris' complaints and history, Dr. Gervais assumed the symptoms were a result of the March 2001 accident. Morris suspended treatment with Dr. Gervais from September 2001 until October 2003, when he returned and continued to complain of pain. Another MRI was taken and it revealed the bulge at L5-S1. Dr. Gervais found all objective tests to be normal and an EMG/nerve conduction test was normal.
Morris filed suit against Andrew, Andrew's employer, and her employer's insurer, Zurich American Insurance Company. In his suit, Morris claimed he had sustained severe personal injuries and was *1141 unable to work for pay as a result of the accident.
Following a bench trial, the trial court rendered judgment in open court on May 12, 2004 and concluded that Morris and Andrew were each 50% at fault for the accident. In addition, the trial court found that Morris did not sustain any injury from the motor vehicle accident in question. Judgment was rendered in favor of defendants and against plaintiff, dismissing Morris' petition. The trial court also ordered Morris to pay all costs incurred by defendant.
For the reasons set forth below, we affirm the trial court's judgment in favor of defendants.

DISCUSSION
The court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Id. In order to reverse a fact finder's determination on the basis of manifest error, a two part test must be satisfied: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of trial court, and (2) the appellate court must also determine that the record establishes that the finding is clearly wrong. Weatherford v. Commercial Union Ins., 94-1793, 94-1927 (La.2/20/95) 650 So.2d 763.
In this case, the trial court found Morris and Andrew to be equally at fault in the cause of the accident. Andrew testified that she was sitting in the pick-up truck in the driveway with her foot on the brake. She testified that she was not attempting to back out of the driveway, and the next thing she knew, the truck was turned around and she was in the middle of the street. Morris testified that he did not see Andrew's truck until it hit his car. He admitted he had no distractions and did not see any other vehicles on the street at the time. Morris claimed he did not see Andrew's truck until a split second before the accident. He did not attempt to swerve, blow the horn, or speed up to avoid the accident. Based on the testimony presented at trial, we find the trial court was not clearly wrong and did not commit manifest error by finding that Morris and Andrew were each 50% at fault in the cause of the accident.
Further, we agree with the trial court that Morris did not sustain any injury as a result of the accident. Morris claimed he injured his neck and back as a result of this accident. At the scene of the accident, Morris did not request medical assistance. He did not suffer any cuts or scrapes. Andrew was not injured. Morris' wife at the time of the accident, Dawn, testified that Morris drove himself home immediately after the accident and claimed he had a bad headache. She offered to take him to the hospital but he drove himself instead.
Morris was employed with the Jefferson Parish Sheriff's Office as a deputy, but was off-duty at the time of the accident. Morris advised Sergeant Harley Pat Roberts, Jr. of the automobile accident on March 16, 2001. Sgt. Roberts testified, and documented in his file, that Morris later called him at home to say that the truck that hit him had plenty of insurance and he was hurting and could not work. Morris indicated he would return to work on April 2, 2001, however, he never returned. He was put on sick leave and in July 2001, Deputy Chief James V. Miller of the JPSO received a request from the insurance department to conduct an investigation of *1142 Morris. Surveillance video of Morris was taken periodically between July 2001 and September 2001, without his knowledge.
Morris gave a deposition on June 5, 2002. At that time he testified that he had not done any kind of physical labor, maintenance, or construction work since the accident, except he thought he had painted one time. However, the surveillance videos showed him going up and down a ladder, walking on a roof, repeatedly bending and stooping while working on his car, and picking up a heavy riding lawn mower with another man and loading it into the back of a truck. These videos and still photos from the videos were entered into evidence at trial.
Morris saw Dr. Donald S. Gervais, a neurologist, for his alleged injuries. Dr. Gervais testified at trial that the objective tests of reflexes, sensory ability and strength were all normal. Further, he testified that the EMG/nerve conduction tests were normal and did not corroborate Morris' claims of pain and numbness in his right leg. Dr. Gervais noted that Morris is obese and his pain could be caused from being overweight. Dr. Gervais also reviewed the surveillance video and testified that Morris never told him he had participated in those strenuous physical activities.
The defendants obtained an independent medical examination of Morris by Dr. Melvin Parnell. He testified that Morris complained of neck and back pain. Dr. Parnell testified that there were no objective findings to substantiate his complaints. Morris also testified at trial that he was being treated by a psychiatrist, Dr. Oliver Sanders in Slidell. Morris testified that Dr. Sanders prescribed Morris Oxycotin, Vicodin, Soma, Xanax & Viagra. Morris was receiving 120 tablets of Oxycotin per month. Dr. Parnell testified that was twice the recommended dosage. Dr. Parnell testified that Morris told him he had stopped taking the Oxycotin, however, pharmacy records show that Morris continued to fill the medication.
After hearing the testimony and reviewing the evidence presented, the trial judge rendered a judgment in open court, stating that "[t]he court finds that this case is replete with deceptions, distortions and what appears to be outright lies. They are extensive and pervasive not only to the doctors but to the lawyers and to this court. We are of the opinion that plaintiff has testified falsely on material facts in this case for the purpose of deceiving the court and his testimony is not worthy of belief." The trial court went on to find that Morris' "... testimony was concocted and it was part of a plan or scheme by the plaintiff to get medical treatment and to make claims against the defendant in this case when, in fact, he had no such injuries."
We find that the trial court was not manifestly erroneous and its findings were based on the evidence presented at trial. Therefore, we affirm the trial court's judgment finding Morris and Andrew each to be 50% at fault in the cause of the accident and, further, that Morris did not sustain any injury as a result of this accident.
AFFIRMED.
DALEY, J., Concurs with Reason.
DALEY, J., Concurring.
I concur to express the view that I find the assessment of fifty percent fault to the plaintiff to be excessive, given the fact that the plaintiff was traveling along a favorite right-of-way when defendant backed into his vehicle. I, however, find no basis to disturb the trial court's finding that the plaintiff was not injured in the accident, *1143 and so, I join the majority and affirm the judgment of the trial court.